# In the United States Court of Federal Claims

No. 11-692C

(E-Filed: February 27, 2014)

| | |
|---|---|
| HUNTINGTON PROMOTIONAL & SUPPLY, LLC, | Motion to Dismiss for Lack of Jurisdiction, RCFC 12(b)(1); Motion to Dismiss for Failure to State a Claim, RCFC 12(b)(6); |
| Plaintiff, | Conversion to Motion for Summary Judgment under RCFC 56, RCFC 12(d); |
| v. | Substantive Contract Provisions on which a Party Relies, RCFC 9(k); Equal Access to Justice Act (EAJA); Implied-in-Fact Contract; Authority of Government Official; Ratification |
| THE UNITED STATES, | |
| Defendant. | |

Lawrence M. Magdovitz, II, Cordova, TN, for plaintiff.

Alex P. Hontos, with whom were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**CAMPBELL-SMITH, Chief Judge.**

This case involves a claim for breach of contract. Plaintiff alleges that its invoices for promotional goods that were custom made for, and shipped to, various Army and Air Force Exchange Services (AAFES) locations have not been paid.

Before the court is defendant's motion to dismiss plaintiff's complaint (Def.'s Mot.), Dkt. No. 25, filed October 27, 2012, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), or, in the alternative, under RCFC 12(b)(6) for failure to state a claim, or for violation of RCFC 9(k). Defendant challenges the sufficiency of the allegations in the complaint and points to deficiencies in the contracting authority of the alleged government actors. Also before the court are: plaintiff's response to defendant's motion (Pl.'s Resp.), Dkt. No. 26, filed November 28,

2012, attached to which is plaintiff's appendix (Pl.'s App.), Dkt. No. 26-1, and defendant's reply to plaintiff's response (Def.'s Reply), Dkt. No. 27, filed December 17, 2012, attached to which is defendant's appendix (Def.'s App.), Dkt. No. 27-1.[1]  The court heard oral argument on February 28, 2013.

Documents appended to the parties' filings suggest that plaintiff may have been sending unsolicited goods to Army and Air Force exchange posts.  If true and unrebutted, plaintiff's effort to prove that it had a valid contract with the government would be unavailing.  But, plaintiff insists that it can identify by name those exchange post employees who confirmed the orders for Huntington's promotional goods.  Alternatively, plaintiff asserts that a contracting officer ratified the oral arrangements for the goods.

The allegations in plaintiff's complaint and its response to defendant's jurisdictional challenge are sufficient to defeat defendant's motion to dismiss.  But questions about the contracting authority of the government actors persist.  An evaluation of the legal effect of the actions taken by various store employees and the contracting officer, requires further development of the factual record.

As more fully explained below, defendant's motion to dismiss is DENIED-IN-PART and is CONVERTED-IN-PART to a RCFC 56 motion for summary judgment.  The court STAYS the summary judgment motion to allow the parties, if desired, to conduct discovery and to file supplemental briefing.  The court DISMISSES plaintiff's EAJA claim without prejudice.

I.      Background[2]

Huntington Promotional & Supply, LLC, (Huntington Promotion, Huntington, or plaintiff) is a promotional products company based in Tennessee.  Compl., Dkt. No. 1, ¶¶ 1, 5.  Plaintiff alleges that it filled orders from several Army and Air Force Exchanges (exchanges, stores, or posts) at various times in 2009 for custom imprinted promotional items.  Id. ¶ 7.  The promotional items included pens, license plate holders, and ice

---

[1]     When citing to the appendix to plaintiff's response (Pl.'s App.), Dkt. No. 26-1, and the appendix to defendant's reply (Def.'s App.), Dkt. No. 27-1, the court cites to the page number assigned by the party.

[2]     The court recites facts taken from the complaint as well as from the appendix to the joint preliminary status report (JPSR App.), Dkt. No. 13-1, plaintiff's appendix and defendant's appendix.  The court has examined the parties' allegations of fact for the purpose of determining its jurisdiction.

scrapers; each item was imprinted with the name of the ordering military installation. [3] See id. ¶ 7; id. at 7–9 (invoices).  Plaintiff states that its representatives telephonically confirmed orders with local military exchanges before authorizing the manufacture of the products by a third party and arranging for shipping to the posts.  Id. ¶¶ 8, 10.  Plaintiff generated an invoice for each order and attached twenty-one invoices to its complaint.  Id. ¶ 9; id. at 6–26 (invoices).  The invoices total $61,473.50.  Id. ¶ 9; id. at 5 (invoice summary).

Several months prior to the transactions referenced in the complaint, representatives from Huntington met with contracting officer Robert Schmid to explore potential business opportunities with AAFES.  Def.'s App. 16 ¶ 4 (Decl. of Robert F. Schmid) (stating that Mr. Schmid and a colleague met with Huntington representatives on June 10, 2009).  At that meeting, Mr. Schmid adverted to an impending change in the AAFES policy governing how stores acquired goods for sale.  Id. ¶ 5.  Mr. Schmid described the policy change as follows:

> Prior to 2009, AAFES used a "store/headquarters buying responsibility," meaning some purchase decisions were made by stores and others were made by headquarters.  During 2009, this process changed and headquarters took responsibility for purchasing decisions for individual stores.  One requirement of the change was that all potential vendors have an AAFES-approved retail agreement.  Without such an agreement, a vendor cannot sell goods to AAFES for resale purposes. . . .  A retail agreement must be signed by both the Contracting Officer and the vendor.  I discussed these changes with Huntington, including explaining to its representatives that all buying decisions would be made by headquarters (i.e., me and my team) after August 1, 2009.  Huntington has never had an AAFES retail agreement.

Id.  The majority of plaintiff's invoices—seventeen of the twenty-one submitted—are dated after August 1, 2009. [4]  See Compl. 5 (invoice summary) (listing the dates of the

---

[3]     Plaintiff attached a summary of its invoices and the twenty-one underlying individual invoices to its complaint.  See generally Compl., Dkt. No. 1.  When citing to the invoices, the court cites to the complaint and page number assigned by the court's electronic case filing system that appears at the top of the referenced page.

[4]     Plaintiff's invoices bear "invoice dates," but do not list the dates on which the orders were placed.  See Compl. 6–26 (invoices).  Plaintiff's counsel represented at oral argument that Huntington does not have any record of the dates on which the orders were placed.  Tr. Oral Arg., Dkt. No. 34, at 56: 3–7 ("[M]y client doesn't have any . . . specific information on what day the call was made, but in the course of business practice, it would have been . . . if not the day of the invoice, it would have been around that time.").

invoices).  Four of the invoices predate the change in buying responsibility for AAFES: one invoice is dated April 26, 2009, and three are dated July 30, 2009.  See id.

In October of 2009, a general manager at the Dyess Exchange, Sheila Miller (Ms. Miller), sent an e-mail stating that Huntington had shipped unordered goods to the exchange.[5]  Def.'s App. 11 (e-mail from Sheila L. Miller, Oct. 13, 2009).  The e-mail contains the subject line "Huntington Promotion" and states, in relevant part:

> This company has shipped several cases of souvenir type items to our store. The problem is, no one ordered the merchandise.  It arrived without invoices or any contact information.  The merchandise was not even in the system.  After finally tracking down the company . . . , they asked if we would keep it for a lower cost.  Of course, we said no.  They then said they would provide call tags for pick up.  The merchandise is still in our store. After all the contact with this company, they then sent us invoices.  We are still trying to get this company to pick up the merchandise.

Id.

---

Plaintiff instead submitted a document to the court purporting to represent when certain orders were verified.  See Pl.'s App. 29–30 (e-mail from Larry Magdovitz, Sept. 13, 2011) (Contact List E-mail).  In response to the contracting officer's request for proof of delivery, plaintiff submitted a list of its local exchange contacts.  See id.  The Contact List E-mail contains the following information for each entry:  name of exchange, contact person at that exchange, phone number, and the date the order was verified.  Id.  For some of the entries, a tracking number of the shipment is also listed.  Id.  Of note, the dates listed in the Contact List E-mail do not match the invoice dates.  Compare id., with Compl. 6–26 (invoices).  One possible explanation for this discrepancy is that Huntington verified orders on different dates.  While the Contact List E-mail provides some indication of what and when Huntington communicated with the exchanges, it does not provide a comprehensive summary of the dates on which orders were placed.  For example, plaintiff attached to its complaint four invoices for Dyess Air Force Base—two orders invoiced on September 3, 2009 and two orders invoiced on October 3, 2009.  See Compl. 15–16, 22–23 (invoices).  But, review of the Contact List E-mail reveals only one entry for a verified order for Dyess Air Force Base.  See Pl.'s App. 29–30 (Contact List E-mail).  Unclear to the court is whether all of the invoices were generated from one verified order, or whether additional orders were verified—beyond those listed in the Contact List E-mail—which correspond to the additional invoices.

[5]     The e-mail recipient is identified as "zzWR MSM."  Def.'s App. 11 (e-mail from Sheila L. Miller, Oct. 13, 2009.)

A series of e-mails ensued conveying Ms. Miller's concerns up the chain of command. See Joint Preliminary Status Report App. (JPSR App.[6]), Dkt. No. 13-1, 39–42 (Oct. 13, 2009 emails).  Instructions were given to place an immediate hold on payments to Huntington.  Id. at 39 (e-mail from Edward W. Brassart, Oct. 13, 2009).  As the contracting officer, Mr. Schmid sent an action alert directing that any deliveries received from Huntington were to be refused at the dock.  Def.'s App. 12 (e-mail from SD Store Communications, Oct. 14, 2009); see also Def.'s App. 17 ¶ 7 (Schmid Decl.).  Plaintiff complains in this action that its products were returned after it had confirmed the orders.  See Compl. ¶ 11.

On February 15, 2011, plaintiff submitted its invoices with a demand for payment or, alternatively, a decision from the contracting officer regarding its claim.  Id. ¶ 13.  The contracting officer had doubts about the received invoices,[7] Def.'s App. 17 ¶ 9 (Schmid Decl.), and requested more information from Huntington about the alleged transactions.  Specifically, he asked plaintiff to furnish copies of the purchase orders and the correlative proof of receipt, bearing the requisite signatures of an authorized AAFES agent.  Id. ¶ 10.  The court cannot discern from the documents before it either when Mr. Schmid made this request or whether plaintiff responded.

In June of 2011, nearly three months after plaintiff submitted its invoices, plaintiff's counsel contacted the contracting officer complaining that no response to the February demand had been received.  Def.'s App. 15 (e-mail from Larry Magdovitz, June 8, 2011).  Plaintiff advised that it would file suit if no payment were received.  Id.

The contracting officer responded to plaintiff that same day.  Def.'s App. 14 (e-mail from Robert Schmid, June 8, 2011).  He stated that he was awaiting information about the alleged orders from those AAFES associates with whom plaintiff claimed to

---

[6]     When citing to the JPSR Appendix, the court cites to the page number assigned by the court's electronic case filing system that appears at the top of the referenced page.

[7]     Mr. Schmid described his concerns about the invoices:

[T]he box labeled 'Customer PO [(Purchase Order)]' number was blank on each invoice.  If these orders had been placed, the AAFES official making the order would have provided Huntington a PO number, which Huntington would have put in the Customer PO blank.  Likewise, the invoiced unit prices were high: $10.44 wholesale for an ice scraper is very expensive.  Finally, the quantities appeared to often be far in excess of the quantities I would have expected: in some cases the quantities amounted to a five-year supply.

Def.'s App. 17 ¶ 9 (Schmid Decl.).

have had contact.  Id.  Of particular interest were the associates' recollections of any business dealings with Huntington.  Id.  Plaintiff's failure to supply the information earlier requested of it had prompted the contracting officer to inquire of the AAFES associates directly.  Def.'s App. 17, ¶¶ 10, 12 (Schmid Decl.).  The contracting officer intended to forward the associates' responses to AAFES's general counsel who, in turn, would contact plaintiff.  Def.'s App. 14 (e-mail from Robert Schmid, June 8, 2011).

Two days later, on June 10, 2011, the contracting officer sent a follow-up e-mail to plaintiff's counsel.  Def.'s App. 14 (e-mail from Robert Schmid, June 10, 2011) (Approval E-mail).  He stated:

> After consulting with our General Counsel and reviewing all open invoices due I have decided to approve the payment of open invoices presented by your client to our accounts payable department.  This decision does not condone the business practices of your client but speaks more for the desire of [t]he Exchange to at all times follow all applicable laws regarding payments and receipts from our vendors.

> The fact remains that your client shipped product to our stores which had not been ordered and in most cases could not be received.  Repeated attempts by our stores to return this merchandise were ignored.  A copy of this correspondence is being placed in your client[']s effectiveness file and will certainly be reviewed and considered in determining responsibility for future awards.

> Our Finance department is compiling these invoices and will also calculate any applicable late payment fees.  I'll update this E-MAIL when I have been given the invoice total hopefully before I leave today.[8]

---

[8]     Mr. Schmid provided more detail in his declaration about his e-mail dated June 10, 2011, explaining that "'open invoices' [referred to] any invoice . . . received by [the] accounts payable department that met all the requirements for payment (e.g., that accounts payable actually had the invoices and that Huntington had satisfied the proof-of-delivery requirement) but had not yet been paid." Def.'s App. 18 ¶ 13 (Schmid Decl.). When Mr. Schmid authorized payment of plaintiff's invoices in the June 10, 2011 e-mail, he was unaware that there were no open invoices from Huntington before the accounts payable department.  Id.

Although Mr. Schmid's declaration contains a definition of "open invoices," his earlier June 10, 2011 e-mail sent to plaintiff's counsel did not.  Compare id., with Def.'s App. 14 (e-mail from Robert Schmid, June 10, 2011) (Approval E-mail).  But when plaintiff demanded payment in February 2011, Mr. Schmid had concerns about plaintiff's invoices, Def.'s App. 17 ¶ 9 (Schmid Decl.), and in the subsequent e-mail in which he

Id. (footnote added).  But, this e-mail did not resolve the matter.

One week later, the contracting officer e-mailed plaintiff's counsel again reporting that the accounts payable department had no unpaid invoices from Huntington.  Def.'s App. 13 (e-mail from Robert Schmid, June 17, 2011).  The contracting officer asked to have the unpaid invoices, together with proof of delivery, forwarded to him.  Id.

In response, plaintiff's counsel forwarded the requested invoices to the contracting officer.  Pl.'s App. 31 (e-mail from Larry Magdovitz, June 30, 2011).  However, counsel did not forward any proof of delivery.  Pl.'s App. 30–31 (e-mail from Robert Schmid, June 30, 2011).

A few months later, plaintiff sent an e-mail to the contracting officer containing a list of contact persons at the ten different exchange locations that allegedly had ordered goods from Huntington.  Pl.'s App. 29–30 (e-mail from Larry Magdovitz, Sept. 13, 2011) (Contact List E-mail); see supra note 4 (discussing the Contact List E-mail).  Plaintiff also provided tracking information for two of the twenty-one orders and indicated that "proof of delivery [was] attached" for one order.[9]  Pl.'s App. 29–30.  The contracting officer reiterated in his response to plaintiff that payment would be authorized only for those orders that had proof of delivery.  Pl.'s App. 29 (e-mail from Robert Schmid, Sept. 18, 2011).

Huntington has not received payment for its invoices.  Compl. ¶ 14.  Nor has the contracting officer issued a final decision denying plaintiff's claim.  Id.  Plaintiff filed a complaint against the government on October 18, 2011.  See id.

Plaintiff alleges that defendant failed to pay the amounts it was invoiced in breach of the parties' contract.  See id. ¶¶ 16, 19.  Plaintiff complains that the custom imprinted goods cannot be resold, id. ¶ 18, and it seeks attorneys' fees under the Equal Access to Justice Act (EAJA) asserting that defendant's refusal to pay for the shipped custom goods is not a substantially justified position, see id. ¶¶ 21–23.

Defendant has moved to dismiss plaintiff's complaint on jurisdictional grounds.  Def.'s Mot. 1.  Defendant argues that the allegations in the complaint, on their face, do not support a breach-of-contract claim.  Alternatively, defendant argues that the

---

agreed to pay the invoices, he alluded to plaintiff's questionable business practices, see Def.'s App. 14 (Approval E-mail).

[9]     The court has no record of the referenced proof of delivery and no information regarding whether, in fact, proof of delivery was attached.

allegations are missing the factual underpinnings that would establish the existence of a legally binding agreement.  Id.

The government asks the court, in a footnote, to evaluate the allegations in the complaint by applying a failure to state a claim standard, "[i]n the event that the [c]ourt declines to review the complaint through the RCFC 12(b)(1) prism."  Id. at 4 n.1.  In a subsequent footnote, defendant urges the court to dismiss the complaint because it does not comply with RCFC 9(k), id. at 8 n.2, which requires "a party [to] identify the substantive provisions of the contract . . . on which the party relies[,] . . . [or] annex to the complaint a copy of the contract," RCFC 9(k).  The government further asserts that plaintiff's request for attorneys' fees pursuant to EAJA is premature and must be dismissed.  Def.'s Mot. 3.

II.      Applicable Legal Standards

     A.      The Standards for Dismissal Under RCFC 12(b)(1) and the Requirements of RCFC 9(k)

Plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence.  See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  In the circumstance in which a plaintiff alleges a breach of contract, "[a] well pleaded allegation of a breach of either an express or implied-in-fact contract is sufficient to overcome challenges to jurisdiction."  Bank of Guam v. United States, 578 F.3d 1318, 1325 (Fed. Cir. 2009) (citing Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997)).

Moving for dismissal pursuant to RCFC 12(b)(1), defendant questions the sufficiency of the allegations in the complaint on their face and thus, mounts a facial challenge.  The United States Court of Appeals for the Federal Circuit instructs that in such circumstances, the allegations in the complaint are taken as true and all reasonable inferences are made in plaintiff's favor.  Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).

Defendant also mounts a factual challenge to the complaint by denying plaintiff's allegations of jurisdiction.  The Federal Circuit has distinguished the standard for reviewing factual challenges from the standard for reviewing facial challenges, explaining that when a factual challenge is presented in the complaint, "only [the] uncontroverted factual allegations are accepted as true for purposes of the motion."  Cedars-Sinai Med. Ctr., 11 F.3d at 1583.  To resolve the disputed jurisdictional facts, the court may examine more than the face of the pleadings; it may consider extrinsic evidence.  Id. at 1584.

Defendant here further challenges the sufficiency of plaintiff's complaint on the ground that it fails to satisfy the requirements of RCFC 9(k).  RCFC 9(k) sets forth the special manner in which contract claims are to be pleaded:

> In pleading a claim founded on a contract or treaty, a party must identify the substantive provisions of the contract or treaty on which the party relies. In lieu of a description, the party may annex to the complaint a copy of the contract or treaty, indicating the relevant provisions.

RCFC 9(k).  If a plaintiff fails to comply with RCFC 9(k) and to allege sufficient facts to show that it had a contract with the United States, the court cannot exercise jurisdiction over the claim.  Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 715 (2010) (citing Mendez-Cardenas v. United States, 88 Fed. Cl. 162, 168 (2009)); Phang v. United States, 87 Fed. Cl. 321, 330 (2009)).[10]

B.     The Standard for Dismissal Under RCFC 12(b)(6) and Conversion to a Motion for Summary Judgment Under RCFC 56

A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  RCFC 8(a)(2).  This "pleading standard . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  When evaluating a motion to dismiss for failure to state a claim upon which relief can be granted under RCFC 12(b)(6), the court must accept the allegations contained in the complaint as true and construe them in the manner most favorable to the non-moving party.  Cedars-Sinai Med. Ctr., 11 F.3d at 1584 n.13.  The court's 12(b)(6) inquiry is limited to examining the facts pleaded in the complaint.  See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1164 (Fed. Cir. 1993).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable[, however,] to legal conclusions."  Iqbal, 556 U.S. at 678. When legal conclusions are asserted in a complaint, "[t]he court must determine 'whether

---

[10]     In each of the rulings cited, the court did not dismiss the claim solely due to a failure to satisfy RCFC 9(k); rather, in each instance, the court conducted a RCFC 9(k) analysis and evaluated its jurisdiction by applying the RCFC 12(b)(1) standard.  See Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 715 (2010); Mendez-Cardenas v. United States, 88 Fed. Cl. 162, 168 (2009); Phang v. United States, 87 Fed. Cl. 321, 330 (2009).

the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." <u>Chapman Law Firm Co. v. Greenleaf Constr. Co.</u>, 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

If the court considers materials outside of the pleadings in its deliberation, a motion to dismiss under RCFC 12(b)(6) must be converted to a motion for summary judgment under RCFC 56 and evaluated under the applicable standard.  RCFC 12(d) ("If, on a motion under RCFC 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56."); <u>Advanced Cardiovascular Sys., Inc.</u>, 988 F.2d at 1164.  In these circumstances, the parties are afforded the opportunity to present any material that would be pertinent to a motion for summary judgment.  RCFC 12(d).

    C.    The Standard for a Fee Award Under the Equal Access to Justice Act (EAJA)

EAJA authorizes the payment of reasonable attorney fees if: (1) the claimant is a prevailing party; (2) the government's position was not substantially justified; and (3) no special circumstances exist that would make an award unjust.  <u>Libas, Ltd. v. United States</u>, 314 F.3d 1362, 1365 (Fed. Cir. 2003).  An application for such fees may be filed after entry of judgment; the filing must be made within 30 days after the court enters judgment. <u>See</u> 28 U.S.C. § 2412(d)(1)(B) (2012).

III.    Discussion

    A.    Plaintiff's Allegations Are Sufficient to Invoke This Court's Jurisdiction

The Court of Federal Claims has jurisdiction over any suit founded upon an express or implied-in-fact contract with the United States pursuant to the Tucker Act.  28 U.S.C. § 1491 ("The United States Court of Federal Claims shall have jurisdiction to render judgment . . .  upon any express or implied contract with the United States . . . .  For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service . . . shall be considered an express or implied contract with the United States.").  "[J]urisdiction under [the Tucker Act] requires no more than a non-frivolous <u>allegation</u> of a contract with the government." <u>Engage Learning, Inc. v. Salazar</u>, 660 F.3d 1346, 1353 (Fed. Cir. 2011).

Plaintiff must allege the elements of a contract to invoke the court's jurisdiction over a contract claim.  <u>See</u> <u>Trauma Serv. Grp.</u>, 104 F.3d at 1325.  The elements are the same for an express or implied-in-fact contract:  "a mutual intent to contract including an offer, an acceptance, and consideration," and actual authority on the part of the government representative to bind the United States in contract.  <u>Id.</u>  In the circumstance in which an implied-in-fact contract has been alleged, the element of an express offer and

acceptance may be missing, but the parties' conduct can demonstrate mutual assent.  City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998).

If a government representative is discovered to have acted without appropriate contracting authority, the action can be ratified to create an enforceable contract. Ratification of a contract requires a showing, by plaintiff, that: (1) the government agent who lacked contracting authority had some similar type of authority; (2) some government agents were aware of the proposed agreement; and (3) the government received a "direct benefit" from the unauthorized contract.  Doe v. United States, 58 Fed. Cl. 479, 486 (2003) (citing Janowsky v. United States, 133 F.3d 888, 889–92 (Fed. Cir. 1998)), aff'd, 112 Fed. App. 54 (Fed. Cir. 2004).  Proof of ratification also requires a showing that the ratifying official had actual or constructive knowledge of the unauthorized act based on "'full knowledge of all the facts'" and yet, actively approved the contract.  Id. (emphasis omitted) (quoting Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998)).

Plaintiff asserts that after it confirmed orders for its custom-made promotional goods with various AAFES stores, shipped the ordered goods and sent billing invoices, defendant breached its contractual arrangement with plaintiff by failing to pay.  Compl. ¶¶ 8, 10, 16, 19.  In the alternative, plaintiff asserts that if the arranged orders did not constitute enforceable contracts, the contracting officer subsequently ratified the arranged orders in an e-mail sent to plaintiff's counsel.  Pl.'s Resp. 9.  On its face, plaintiff's claim for relief appears to fall squarely within the jurisdiction of the court over claims founded upon a contract with the government.  See 28 U.S.C. § 1491; Trauma Serv. Grp., 104 F.3d at 1325 ("[Plaintiff's] complaint alleges that an express and, in the alternative, an implied-in-fact contract underlies its claim.  This allegation suffices to confer subject matter jurisdiction in the Court of Federal Claims.").

Defendant, however, denies the existence of a contract between Huntington and the government, challenging the factual sufficiency of plaintiff's complaint on the ground that plaintiff failed to allege that the named contacts at the exchange posts had the requisite contracting authority to bind the government.  Defendant assails the underpinnings of plaintiff's claim, setting forth a factual account that differs from plaintiff's account.

Defendant contends that plaintiff shipped its goods to AAFES stores without first confirming orders.  Def.'s Mot. 9.  Then plaintiff invoiced the stores for the delivered goods, with the hope of obtaining payment—notwithstanding the absence of a contract. Id.  Urging the court to look beyond the face of the complaint, defendant mounts a jurisdictional challenge to the facts on which plaintiff's complaint is based.  Id.

In support of its jurisdictional challenge, defendant has presented extrinsic evidence to the court that has not been excluded.[11]  Therefore, the allegations in the complaint are not controlling.  See Cedars-Sinai Med. Ctr., 11 F.3d at 1583–84. Consistent with the applicable standards of review, the court accepts as true only the uncontroverted facts alleged by plaintiff, and considers the evidence provided by the parties outside of the pleadings to determine whether this court has jurisdiction over plaintiff's claim.  Id.

The salient question presented here is not whether plaintiff has proven satisfactorily the elements of contract formation, but whether plaintiff has alleged the existence of a contract sufficiently for the court to exercise its jurisdiction over plaintiff's claim.  See Total Med. Mgmt. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997) ("[T]he law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven."); see also Engage Learning, Inc. v. Salazar, 660 F.3d 1346 (Fed. Cir. 2011) ("'[J]urisdiction is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.'  Rather, . . . 'it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'" (internal citations omitted) (alterations in original) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946))).

Plaintiff argues that its allegations paired with evidence in the form of invoices, e-mail correspondence listing government actors at each of the exchanges, and a possible ratification e-mail from the contracting officer are sufficient to invoke the court's jurisdiction.  The court agrees.

> 1.   Plaintiff's Allegations Concerning the Authority Element of Contract Formation Are Sufficient

Defendant argues that plaintiff has not alleged sufficiently the authority element of its claimed contract.  Def.'s Mot. 7.  According to defendant, plaintiff has failed to assert that the government officials listed in the Contact List E-mail were the ones who ordered the goods; that the government actors had either the position or authority to bind defendant contractually; and that the agency followed the pertinent procedures to place the orders at issue.  Id.

---

[11]   The court has considered the following evidence submitted by the parties outside of the pleadings:  e-mail exchanges between the parties, see Pl.'s App. 27–31; JPSR App. passim, and declarations of the contracting officer and of two exchange managers, who ostensibly were working at the named exchanges when the alleged events occurred, Def.'s App. 16–21.  Plaintiff did not request a sur-reply after defendant submitted the aforementioned materials with its reply brief.  Nor has plaintiff had the opportunity to depose the declarants.

Defendant contends the cited omissions warrant dismissal of plaintiff's complaint, and defendant points to two decisions in which courts found that the plaintiff's failure to identify with particularity who contracted on behalf of the government defeated plaintiff's contract claim.  Def.'s Reply 2.  But, the cases defendant references for this proposition were decided on the merits, not on the jurisdictional grounds defendant urges here.  See, e.g., Trauma Serv. Grp., 104 F.3d at 1327 (finding that "[a] well-pleaded allegation in the complaint [was] sufficient to overcome challenges to jurisdiction," but ruling that plaintiff had failed to state a meritorious claim because it had not identified any particular government representative who entered into the alleged contract); Pennco Trucking Inc. v. United States, 20 Cl. Ct. 534, 540 (1990) (In the context of a summary judgment ruling to recover freight charges, the court found that a declaration furnished by plaintiff that failed to identify the pertinent government personnel did not satisfy plaintiff's burden of proof, but letters demonstrating the same proposition were sufficient to grant relief in plaintiff's favor.).  The court does not find these cases helpful to the instant jurisdictional analysis.

Defendant also relies on the exhibits it attached to its briefing to refute plaintiff's claim that it formed contracts with AAFES's store managers.  For example, attached to the government's reply brief is a declaration from Andrea Frazier (Ms. Frazier), who served as the manager of the exchange post at Nellis Air Force Base and whom plaintiff identified as a key contact person.  Def.'s App. 21 (Decl. of Andrea Frazier); see Pl.'s App. 29–30 (Contact List E-mail).  Ms. Frazier denies meeting with Huntington, and does not recall any other contact with Huntington as a vendor.  Def.'s App. 21 (Frazier Decl.).

Defendant provides, as another exhibit, the declaration of Ms. Miller, the store manager who first alerted upper management that Huntington was shipping unordered goods.  Def.'s App. 20 (Decl. of Sheila L. Miller).  Ms. Miller's declaration was consistent with the earlier e-mail she sent reporting that Huntington had shipped unordered goods to Dyess Air Force Base.  Compare id., with Def.'s App. 11 (e-mail from Sheila Miller, Oct 13, 2009).

The statements of Ms. Frazier and Ms. Miller call into question—but do not resolve—whether plaintiff confirmed the alleged orders for promotional goods with either authorized officials or other personnel at the various exchanges.  Neither Ms. Miller nor Ms. Frazier addressed their authority to contract.  Moreover, plaintiff asserts that it formed contracts with at least eight additional AAFES stores for which there is not yet any evidence or deposition testimony regarding the authority or recollections of the government actors listed as plaintiff's contacts at those exchanges.

Plaintiff has presented a list of the government actors who allegedly ordered goods or confirmed orders with plaintiff.  Pl.'s App. 29–30 (Contact List E-mail); see Tr. Oral

Arg. 59:10–17.  And controlling case law teaches that an allegation of contract formation with an authorized government agent is sufficient for plaintiff to meet its burden of demonstrating the court's jurisdiction.  See Engage Learning, Inc., 660 F.3d at 1353 ("[J]urisidction under [the Tucker Act] requires no more than a non-frivolous allegation of a contract with the government.") (emphasis omitted); Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed. Cir. 1995) (ruling that "[t]he Court of Federal Claims must first assume jurisdiction" before it could determine whether plaintiff had proven the elements of an implied-in-fact contract.) see also Sommers Oil Co. v. United States, 241 F.3d 1375 (Fed. Cir. 2001) (finding that although "the complaint is not a model of pleading, as it does not specifically assert that the government's contractual commitment was made by a person with statutory or regulatory authority to do so[,] . . . we conclude that the complaint alleges authorization sufficiently to withstand a motion to dismiss," and "[t]o the extent that the government means that [plaintiff] was required to identify and plead the particular person who approved the contractual arrangement with [plaintiff] and the particular statute or regulation that authorized that person to commit the government in contract, we disagree.  It was sufficient for the complaint to allege that the government's promise was authorized by a person having legal authority to do so . . . .").

Absent additional evidence, plaintiff's claim that it contracted with named store managers is sufficient to invoke the court's jurisdiction, provided the remaining elements of a contract are sufficiently alleged.

Of the elements required for a contract, the parties have focused primarily on the authority of the government's agents.  The parties devote less attention to the remaining elements of contract formation here, but the court is satisfied that those elements were pled sufficiently for jurisdictional purposes.[12]  Additional factual development is necessary to determine whether the store-level personnel with whom plaintiff

---

[12]     Defendant argues that Mr. Schmid's suspicion concerning plaintiff's invoices demonstrates ambiguity in the offer and the acceptance of the purported contract.  Def.'s Reply 7; Def.'s App. 17 ¶ 9 (Schmid Decl.) (stating that the invoices were suspicious because the purchase order number was blank, the prices were high, and the quantities were in excess of what would have been expected).  Defendant adds that had the contract terms been clear, plaintiff would not have proposed that the exchanges keep the delivered goods at a lower price.  Def.'s Reply 7–8; see Def.'s App. 11 (E-mail from Sheila L. Miller, Oct. 13, 2009) (stating that plaintiff shipped unordered goods and then asked if the store would keep the merchandise for a lower cost).

Mr. Schmid's concerns about the invoices prepared by plaintiff, in part triggered by the absence of any customer purchase order number on the invoices, merit closer attention.  But for the purpose of establishing the court's jurisdiction, the combination of plaintiff's invoices and plaintiff's list of alleged contacts at each exchange is sufficient.

communicated regarding its promotional goods were authorized to enter into the alleged contracts, and if not, whether defendant subsequently acted to ratify the implied agreements.

> ### 2.   The Cases Defendant Cites in Support of Dismissal for Lack of Jurisdiction Are Inapposite on the Facts of This Case

Defendant cites decisions on which it relies in support of its dismissal motion. Defendant asserts that in each of the cases, plaintiff's claim was dismissed on jurisdictional grounds due to the insufficiency of plaintiff's evidence regarding whether a contract with the government had been formed.  Def.'s Mot. 5–6.

In Cain v. United States, the appeals court affirmed this court's dismissal of a failed savings and loan association case.  350 F.3d 1309, 1310 (Fed. Cir. 2004).  The government had approved, in a letter to plaintiff, the proposed conversion from a mutual association to a stock company.  Id. at 1311–12.  Plaintiff argued that the letter, together with other correspondence, was evidence of a contract between the parties.  Id. at 1314–16.  The court found that the letter simply reflected the Bank Board's regulatory approval of the proposed conversion, and observed that "'[a]n agency's performance of its regulatory or sovereign functions does not create contractual obligations.  Something more is necessary.'"  Id. at 1315 (quoting D&N Bank v. United States, 331 F.3d 1374, 1378–79 (Fed. Cir. 2003)).  Absent the formation of a contract between the parties, the court affirmed the dismissal of plaintiff's claim for lack of jurisdiction.  See id. at 1317; see also Cain v. United States, 53 Fed. Cl. 658, 667 (2002) (dismissing plaintiff's claim for lack of jurisdiction).

In Ryan v. United States, another savings and loan case, plaintiff contended that regulatory approval of its transition from a savings and loan association to a state-chartered bank resulted in a contract between the bank and the government.  57 Fed. Cl. 731, 733 (2003).  Although plaintiff alleged that the "totality of the conduct" of the Office of Thrift Supervision and the Federal Deposit Insurance Corporation had produced an implied-in-fact contract, plaintiff failed to allege any of the elements of an implied-in-fact contract.  Id.  Nor did plaintiff identify a government actor with whom it had communicated at the bank who might have had authority to enter into the purported contract.  Id.  The court dismissed plaintiff's claim, on defendant's motion, for lack of jurisdiction.  Id. at 734.

In another Court of Federal Claims decision, Central Freight Lines, Inc. v. United States, plaintiff argued that it had a contract with the United States for transportation services based on its name appearing on bills of lading.  87 Fed. Cl. 104, 108–09 (2009).  The court ruled that no contract existed between plaintiff and the government because, inter alia, plaintiff was a subcontractor and did not have privity of contract with the government.  Id. at 109.  The court also found that the prime contractor was not an agent

of the United States and had no authority to bind the government.  Id.  The court dismissed for lack of jurisdiction.  Id. at 113.

The rulings in Cain and Ryan turned on a finding that the government's regulation of the plaintiff bank failed to create a contractual relationship.  And in Central Freight Lines, the plaintiff was a subcontractor and was therefore unable to allege privity of contract.  In contradistinction to the cases cited by defendant, plaintiff here describes a contract for the sale of goods to defendant—not a regulatory one.  Moreover, the government does not contend that Huntington was a subcontractor or lacks privity of contract with the government for some other reason.  In the instant case, plaintiff has supplied the court with the invoices it presented to defendant and the names of plaintiff's contacts at each AAFES store to support its claim of having formed a contract with defendant.

 Plaintiff alleges that it formed a contract with defendant either by its initial communication with personnel at the exchange posts or by a subsequent ratification e-mail from Mr. Schmid.  And in satisfaction of the special pleading requirement set forth in RCFC 9(k) that a claimant either "identify the substantive provisions of the contract or . . . annex to the complaint a copy of the contract," plaintiff annexed to its complaint copies of the invoices sent to the AAFES exchanges.

Defendant's challenge to the existence of a contract and the evidence it has introduced compel a closer look at whether a contract, in fact, was formed in this case.  But defendant does not point to a case —and the court has not found one—in which the plaintiff has alleged the elements of a contract for goods, and the claim was dismissed on jurisdictional grounds because the factual underpinnings for the elements of the contract were called into question.  Cf. Bailey v. United States, 40 Fed. Cl. 449, 461–62 (1998) (denying the government's motion to dismiss for lack of jurisdiction where additional factual development was necessary to resolve the issues of authority to contract and contract formation).  The court finds that further factual development is necessary to determine whether the parties formed the contract plaintiff alleges.  That determination is pending.  At this juncture, however, the court is satisfied that plaintiff's assertions survive the jurisdictional challenge posed.

B.      On the Record Before It, the Court Cannot Rule on Whether Plaintiff Has Failed to State a Claim for Which Relief Can be Granted

Defendant, alternatively, moves the court to evaluate plaintiff's claim under the standard governing a RCFC 12(b)(6) motion to dismiss for failure to state a claim.  Def.'s Mot. 4 n.1.  But, plaintiff has alleged in its complaint the existence of a contract with the United States and a breach of that contract caused by the government's failure to pay plaintiff's invoices.  These claims, and the uncontroverted facts presented here, would appear to satisfy the plausibility standard announced in the Supreme Court's decisions in

Twombly and Iqbal.  See Iqbal, 556 U.S. at 678 ("[The] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting Twombly, 550 U.S. at 570 (2007))).

Defendant disputes the existence of a contract and has attached exhibits to its filings that the court has considered and declines to exclude.  See supra note 11, (identifying the extrinsic evidence submitted by the parties and considered by the court).  Because the court has examined the materials provided it by the parties outside of the pleadings, it cannot decide the motion as one brought under RCFC 12(b)(6).  See RCFC 12(d) ("If, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  Instead, the court must convert defendant's 12(b)(6) motion to one for summary judgment.  Id.

The rules of this court require that the court provide the parties with notice of its intention to treat defendant's motion as a motion for summary judgment and an opportunity to proceed pursuant to the rules of summary judgment.  See id.; Easter v. United States, 575 F.3d 1332, 1335 (Fed. Cir. 2009) ("Before the court may convert a motion for judgment on the pleadings into a motion for summary judgment, the court must ordinarily provide notice of its intention to do so."); Advanced Cardiovascular Sys., Inc., 988 F.2d at 1164 ("[O]n motion to dismiss on the complainant's pleading it is improper for the court to decide the case on facts not pleaded by the complainant, unless the complainant had notice thereof and the opportunity to proceed in accordance with the rules of summary judgment.").

As notified, the parties shall proceed by conducting any necessary discovery and supplementing their filings with any pertinent material of their choosing.  On or before **March 14, 2014**, the parties shall file a joint status report proposing a schedule for further proceedings.

C.     Plaintiff's EAJA Claim Is Dismissed as Premature

Defendant argues that Huntington's request for attorneys' fees is premature and must be dismissed because it is not ripe.  Def.'s Mot. 9–10.  The court agrees that the application was filed too early.  An application for attorneys' fees under EAJA must be filed within the thirty day period after entry of judgment.  See 28 U.S.C. § 2412(d)(1)(B).  Attorneys' fees are awarded under EAJA when "the party is a prevailing party,"[13] and the

---

[13]     To qualify as a prevailing party, "there must be an actual, court-ordered alteration in the legal relationship [of] the parties in the form of an entry of judgment or a consent decree."  Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 939 (Fed. Cir. 2007).

government's position in the litigation "was not substantially justified."  See id.  None of these requirements are satisfied presently.  Plaintiff does not dispute the court's lack of jurisdiction to entertain its EAJA claim at this time, but expresses its concern that should the court dismiss its EAJA claim now, the government would attempt to use that ruling against plaintiff in the event that Huntington prevails on the merits.  Pl.'s Reply 9–10.

Huntington's request for fees is not yet ripe, and must be dismissed without prejudice.  See, e.g., Tippett v. United States, 98 Fed. Cl. 171, 183 (2011) (dismissing plaintiff's claims for costs and fees for the instant suit as unripe).  Should the time become appropriate, the court will consider a claim for attorneys' fees.

IV.    Conclusion

Defendant's motion to dismiss is **DENIED-IN-PART** as to the jurisdictional challenge and **CONVERTED-IN-PART** to an RCFC 56 motion for summary judgment as to the challenge for failure to state a claim, the consideration of which is **STAYED** to afford the parties an opportunity, if desired, to conduct additional discovery.  Plaintiff's EAJA claim is **DISMISSED** without prejudice.  On or before **March 14, 2014**, counsel shall file a joint status report proposing a schedule for further proceedings.


IT IS SO ORDERED.

s/ Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Chief Judge